UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK MARVIN,

                      Plaintiff,

    v.

BLANE ALLEN, DENNIS KETCHOM,
MARIE PRUSCHKI, KELLY ESKEW,
KERRY GALLAGHER, *and* COUNTY OF
ORANGE,

                      Defendants.

No. 23-CV-5947 (KMK)

OPINION & ORDER

Appearances:

Mark Marvin
Walden, NY
*Pro se Plaintiff*

Kenneth Ethan Pitcoff, Esq.
Michael Adam Czolacz, Esq.
Morris Duffy Alonso & Faley
New York, NY
*Counsel for Defendants Allen, Ketchom, and Pruschki*

Maritanna Isakov, Esq.
The Isakov Law Firm, P.C.
New York, NY
*Counsel for Defendants Allen, Ketchom, and Pruschki*

Matthew Joseph Nothnagle, Esq.
Office of the Orange County District Attorney
Goshen, NY
*Counsel for Defendants Eskew, Gallagher, and the County of Orange*

KENNETH M. KARAS, United States District Judge:

    Plaintiff Mark Marvin, proceeding pro se, brings this Action against Blane Allen, Dennis

Ketchom, Marie Pruschki, the County of Orange (the "County"), Kelly Eskew, and Kerry

Gallagher (collectively, "Defendants"). (*See generally* Compl. (Dkt. No. 1); Am. Pet. (Dkt. No. 40).) He alleges several constitutional claims arising out of the County's denial of a property tax exemption for property Plaintiff purportedly owns, in addition to a RICO claim based on the same conduct. Before the Court are Defendants' initial and supplemental Motions To Dismiss. (Not. of Mot. (Dkt. No. 18); Letter from Michael A. Czolacz, Esq., to Court ("Defs' Supp. Mem.") (Dkt. No. 36).) For the following reasons, the Motions are granted.

## I. Background

### A. Factual Background

The following facts are drawn from the Complaint and associated filings and are assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff alleges that he came to own real property in the Town of Montgomery by "possession, parol gift, deed, action of law, etc." (Compl. at 4.) The property—previously owned by Plaintiff's mother prior to her passing—had received property tax exemptions, including an enhanced School Tax Relief ("STAR") exemption. (*Id*. at 12.) According to a New York State Department of Taxation flyer attached to the Complaint, the STAR program offers two tiers of relief: "basic" relief if the property is the owner's primary residence and owner earns less than $500,000 in income; and "[e]nhanced" relief for individuals "65 or older" with "an income of $93,200 or less." (*Id*. at 11.) The flyer also states that owners "[i]n the first year of [their] new home" may "receive the prior owner's STAR exemption." (*Id*.)

In a February 22, 2023, letter, the Town of Montgomery notified Plaintiff that the property's tax exemptions expired on account of his mother's death, and that it would be "fully taxable" going forward. (*Id*. at 12.) Soon after, Plaintiff applied for a "Partial Tax Exemption

for Real Property of Senior Citizens" (the "Application"). (*Id*. at 20.)[1] Plaintiff was asked to provide proof of ownership as part of the Application by checking either "Deed" or "Other" and attaching relevant documentation. (*Id*.) Plaintiff checked "Other" and wrote "NY Real Property Law [§] 551" and "Uniform Comm[ercial] Code 9-313." (*Id*.) Those provisions address whether a period of adverse possession continues to run against a descendent owner in the event of an ancestor's death, N.Y. Real Prop. Acts. Law § 551, and how to perfect a security interest by possession or delivery, UCC § 9-313.

In a letter dated May 1, 2023, Orange County denied the Application. The letter stated that Plaintiff failed to demonstrate ownership for at least "12 consecutive months" as required to qualify for his desired exemption. (*Id*. at 13.) According to the County, property records still listed Plaintiff's mother as the owner, not him. (*Id*.) Plaintiff attempted to appeal that determination to the Town Assessor and requested a legal citation substantiating the 12-month ownership requirement. (*Id*. at 14.)

Based on this interaction, Plaintiff alleges that the County "denied [him] rights of ownership" and "invented [its] own law on ownership" and claims as injuries "emotional distress" and "denial of STAR tax relief [and] due process." (*Id*. at 4–5.)

In a subsequent "Amended Petition," Plaintiff recounts an interaction on May 6, 2024, when he visited the Orange County Clerk's office. (Am. Pet. ¶ 1.) Plaintiff attempted to file a Report of Real Property Transfer in connection with his tax exemption Application but was told he had to follow instructions about "Recording a Deed." (*Id*.) Plaintiff appears to claim that recording a deed was not necessary for him to acquire title to the Property and states that the

---

[1] Plaintiff's application form is undated, but it is stamped "return on or before March 1, 2023," and a subsequent letter attached to the Complaint references the Application being filed on February 22, 2023. (*See* Compl. at 13.)

3

misunderstanding resulted in him receiving a "huge and erroneous tax bill." (*Id*. ¶ 4.) Because Plaintiff would be penalized for failure to pay, he claims his tax obligation violates the Takings Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment. (*Id.*) He also alleges that, throughout this process, Defendants, including Orange County Clerk Kelly Eskew, "appear[ed] to be acting [as a] conspiracy, and as a RICO organization to deny [P]laintiff's civil rights." (*Id*. ¶ 5.)

In yet another Amended Petition, Plaintiff claims that Defendant Marie Pruschki, the Town's Receiver of Taxes, participated in the alleged conspiracy and RICO organization by failing to "mail a statement of taxes" showing the amount due on the property to either Plaintiff or his mother's estate. (*See* Memo Endorsement at 1 (Dkt. No. 25).) He adds that the alleged RICO organization effected a grand larceny scheme to "steal his real property and inflict emotional distress." (*Id*. at 2.)

B.  Procedural History

Defendants sought leave to file the instant Motion on October 16, 2023. (Dkt. No. 13.) The Court set a briefing schedule in lieu of a pre-motion conference, (Order (Dkt. No. 15)), and Defendants filed their Motion on November 30, 2023. (Not. of Mot. (Dkt. No. 18); Mem. of Law in Supp. of Defs' Mot. ("Defs' Mem.") (Dkt. No. 19).) Plaintiff filed a response on December 12, 2023, (Answer to Defs' Rule 12 Mot. ("Pl's Mem.") (Dkt. No. 21)), and Defendants replied on January 15, 2024, (Reply Mem. of Law ("Defs' Reply") (Dkt. No. 22)). Plaintiff also filed a sur reply on January 22, 2024. (Sur Reply to Defs' Rule 12 Mot. ("Pl's Sur Reply") (Dkt. No. 24).)

Outside of that briefing, a number of other papers have been filed in this Action. As mentioned above, Plaintiff filed two Amended Petitions, which the Court construed as piecemeal amendments to the Complaint. (*See* Memo Endorsement (Dkt. No. 25); Memo Endorsement

(Dkt. No. 44).) And Defendants responded to each one with supplemental letter briefing. (Supp. Mot. to Dismiss ("Defs' Supp. Mem.") (Dkt. No. 36); Letter from Matthew J. Nothnagle, Esq., to Court (Jun. 21, 2024) (Dkt. No. 42)). Plaintiff filed an additional brief on July 11, 2024, which appears to oppose Defendants' supplemental briefing. (Mem. of Law ("Pl's Supp. Mem.") (Dkt. No. 49).) He also filed a Motion for Judgment, ("Pl's Mot." (Dkt. No. 29)), which the Court construed to add additional arguments to his Opposition brief.

## II. Discussion

### A. Standard of Review

#### 1. 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations adopted)

5

(quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor.  *Id.* at 57.  However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial.  *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).  If the extrinsic evidence presented by the defendant is material and controverted, the Court must make findings of fact in aid of its decision as to standing.  *See Carter*, 822 F.3d at 57.

      2. 12(b)(6)

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ]

6

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v.*

*Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted). Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

    B.  Analysis

Plaintiff's claims stem from the denial of his application for a state tax exemption. (*See generally* Compl.) Defendants contend all such claims are barred by the Tax Injunction Act and principles of comity, which prevent courts from enjoining the assessment or collection of state taxes. (Defs' Mem. 2–4; Defs' Supp. Mem. 2–3.) Plaintiff tries to elude that bar by invoking various statutes and constitutional provisions, (Pl's Mem.4–7; Pl's Supp. Mem. 2–4) but, as explained below, his efforts fail and he must resort to remedies in state court.

Before assessing the Parties' arguments, the Court unpacks in greater detail what it understands Plaintiff to allege. The gravamen of the Complaint is the County's denial of a property tax exemption because Plaintiff was not the record owner of the relevant property. (*See, e.g.*, Compl. at 4.) Liberally construed, Plaintiff's core claim is that he should have been allowed to demonstrate ownership by operation of law, not by recorded deed as the County required. (*See id*.) And Plaintiff accordingly seeks "the STAR exemptions" that he believes are

due. (Pl's Mem. 2.) Flowing from the County's reference to ownership in the denial letter, Plaintiff's papers abound with speculation that something more nefarious is at work—that somehow the Defendants are fabricating laws to deny him "ownership" or to "steal" property he owns. Plaintiff therefore views this case, not as a "tax matter," but as an action to "enforce [his] right to own real property." (Pl's Mem. 4.) He is also concerned that the County's refusal to send him tax bills (again, because he is not the record owner) could result in the seizure of his property if taxes go unpaid. (Pl's Sur Reply 2–3.) To be clear, Plaintiff does not allege that Defendants have done or imminently will do any of these things. Apart from denying his Application and not sending *him* a tax bill, Plaintiff does not actually allege that Defendants have stripped him of ownership, taken title to his property, seized it, forfeited it, or did anything else of the sort. (*See generally* Compl.; Am. Pet.; Am. Compl.) All of that is just Plaintiff's subjective characterization of interactions with County tax officials, which the Court need not consider even in ruling on a pro se complaint. *See Babul v. Demty Assocs. Ltd. P'ship*, No. 17-CV-5993, 2018 WL 2121556, at *2 (E.D.N.Y. May 8, 2018) (noting that courts are not compelled to accept as alleged the plaintiff's subjective characterization); *see also Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, --- F. Supp. 3d ---, 2024 WL 775195, at *29 (S.D.N.Y. Feb. 26, 2024) (finding that a plaintiff's "subjective characterization of [a communication] as lacking 'candor'" did not suffice to allege a defendant's mental state); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (stating "conclusions of law or unwarranted deductions of fact are not admitted" under Rule 12(b)(6) (quotation marks omitted)). Thus, the Court applies Defendants' arguments to claims arising out of those first two acts.

The Court begins, as it must, with Defendants' arguments about jurisdiction. The Tax Injunction Act ("TIA") provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy[,] or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341; *Staten v. Vill. of Monticello,* No. 14-CV-4766, 2015 WL 6473041, at *7 (S.D.N.Y. Oct. 26, 2015) (same); *see also Long Island Lighting Co. v. Town of Brookhaven,* 889 F.2d 428, 431 (2d Cir. 1989) (explaining that the TIA prevents federal courts from providing injunctive relief or declaratory relief "as long as there is a plain, speedy and efficient remedy in state court"). Similarly, comity principles bar "federal courts from granting damages in state tax cases," provided "the remedy afforded by state law is adequate." *Terio v. Carlin,* No. 10-CV-3201, 2010 WL 4117434, at *3 (S.D.N.Y. Sept. 27, 2010); *see also Greenberg v. Town of Scarsdale,* 477 F. App'x 849, 850 (2d Cir. 2012) (summary order) ("[T]he principle of comity prevents a taxpayer from seeking damages in a [Section] 1983 action if a plain, adequate, and complete remedy may be had in state court.").

"Two conditions must be satisfied to invoke the protection of the TIA: first, the surcharges must constitute 'taxes,' and second, the state remedies available to plaintiffs must be 'plain, speedy and efficient.'" *Ass'n for Accessible Meds. v. James*, 974 F.3d 216, 221 (2d Cir. 2020) (quoting *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 713 (2d Cir. 1993) (footnote omitted), *rev'd on other grounds sub nom. N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)). Plaintiff does not dispute that state remedies are available to him and "[t]he Supreme Court has previously determined in other litigation related to the TIA that New York does provide 'plain, speedy and efficient' forums for individuals to bring constitutional challenges to its tax laws." *Abuzaid v. Mattox*, 726 F.3d 311, 316 (2d Cir. 2013) (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 76–77 (1976)); *Glob. Leadership Found. v. City of*

10

*New York*, No. 21-CV-10942, 2022 WL 2788398, at *3 (S.D.N.Y. July 15, 2022) (same). Accordingly, the Court examines whether the property taxes Plaintiff requests an exemption from constitute "taxes."

Whether a suit challenges the assessment of a "tax" is sometimes a complicated inquiry, though that is not the case here. "[M]ost courts agree that assessments which are imposed primarily for revenue-raising purposes are 'taxes,'" in contrast to "levies assessed for regulatory or punitive purposes" which are not. *James*, 974 F.3d at 222 (alteration adopted) (quotation marks omitted). On the spectrum between taxes and fees, property taxes are "classic 'tax[es]' . . . imposed by a legislature upon many, or all, citizens" designed to raise revenue for "the benefit of the entire community." *San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992) (citing *Nat'l Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 340–41 (1974)). It follows that suits seeking property-tax exemptions, like the instant Action, are requests to restrain the "assessment, levy[,] or collection" of a "tax." *See* 28 U.S.C. § 1341. By asking the Court to order the County to grant a STAR exemption, Plaintiff effectively asks the Court "to determine that [Plaintiff] does not owe property taxes the [County] has determined are due and owing." *Carnivale v. City of New York*, No. 17-CV-1868, 2017 WL 5558646, at *2 (E.D.N.Y. Apr. 24, 2017), *aff'd*, 711 F. App'x 59 (2d Cir. 2018) (summary order); *see also Glob. Leadership Found.*, 2023 WL 3144043, at *1–2 (affirming holding that the TIA and comity barred suit challenging denials of "property-tax exemptions").[2] Regardless of how Plaintiff characterizes the denial of an exemption, or the County's reasoning, the basis for

---

[2] In his Motion for Judgment, Plaintiff claims that reference to TIA caselaw is inappropriate because Defendants are using this Action to make "the [C]ourt a party to the government's law breaking." (Pl's Mot. 3.) But all Defendants have done is file a motion to dismiss. It was Plaintiff who invoked this Court's jurisdiction and who must plead a clear basis for doing so.

11

his Action is plainly a "local tax matter," which is "precisely the type of suit the [TIA] was designed to limit." *Staten*, 2015 WL 6473041, at *8 (quoting *Bernard*, 30 F.3d at 297); s*ee also Sandstrom v. Wendell*, No. 23-CV-405, 2024 WL 1242415, at *5 (W.D.N.Y. Mar. 22, 2024) (dismissing challenge to denial of tax-exempt status for lack of jurisdiction because it sought ruling on a "local tax matter").[3]

Plaintiff's invocation of the Due Process, Excessive Fines, and Takings Clauses does not render the TIA inapplicable. (*See* Pl's Mem. 4, 6–7; Am. Pet. ¶ 7.) Instead, where the TIA bars federal court jurisdiction, the Supreme Court has held that plaintiffs should simply "raise any and all constitutional objections to the tax" in state court. *See Hibbs v. Winn*, 542 U.S. 88, 108 (2004) (quoting *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982)). And for the TIA to apply in the first place, courts must find that the plaintiff could obtain "a full hearing and judicial determination" of those claims in state court, just as the Court did here. *See id*. To be sure, there are certain constitutional claims, like "third-party constitutional challenges" where the TIA does not apply. *See Hibbs*, 542 U.S. at 110 (explaining that, in such challenges, a plaintiff does not contest his own tax liability); *see also Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (same). But where a plaintiff "object[s] to [his] own tax situation," federal courts routinely dismiss constitutional claims, including claims sounding in due process. *See, e.g., id.* (quoting *Levin*, 560 U.S. at 430 (holding comity doctrine justified dismissal of equal protection

---

[3] Although Plaintiff's basis for claiming damages is not clear on face, any such claims are barred, too. As several courts have held, a decision that "denials of Plaintiff's tax exemption applications" violated his constitutional rights "is precisely the type of determination that would 'disrupt' New York State's tax administration, rendering it barred by the principle of comity." *Legion of Christ, Inc. v. Town of Mount Pleasant*, No. 18-CV-11246, 2020 WL 4288072, at *7 (S.D.N.Y. July 27, 2020) (quoting *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010)); *Bernard*, 30 F.3d at 298 ("[A] federal-court ruling on the constitutionality of [a municipal tax assessment] plus damages for the resulting harm . . . would [impermissibly] inject the district court into local tax-assessment matters[.]").

12

and dormant Commerce Clause challenges to tax exemptions)); *Legion of Christ, Inc.*, 2020 WL 4288072, at *7 (holding comity barred due process claim for damages based on "repeated denials of tax exemption renewal applications"); *Carnivale*, 2017 WL 5558646, at *2 (dismissing complaint citing "to the Fourth, Fifth and Fourteenth Amendments to the Constitution"). And with respect to the Takings Clause, a long line of Supreme Court caselaw has put it "beyond dispute that taxes . . . are not 'takings'" within the meaning of that provision. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 615 (2013) (alterations adopted) (quotation marks omitted) (citing, inter alia, *United States v. Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989); *County of Mobile v. Kimball*, 102 U.S. 691, 703 (1880) ("[N]either is taxation for a public purpose, however great, the taking of private property for public use, in the sense of the Constitution.")).

Plaintiff cites to *Tyler v. Hennepin County*, 598 U.S. 631 (2023), but that case is inapposite. (*See* Pl's Mem. 6; Am. Pet. ¶ 7.) *Tyler* held that plaintiffs whose property is forfeited and sold to satisfy delinquent property taxes may plausibly allege a taking if the county retains proceeds "in excess of the debt owed," or "surplus." *See id.* at 642. The TIA was not at issue in *Tyler* because, according to the district court, the plaintiff did not contest her tax liability, only the disposition of funds "*after* the County had collected every penny of the delinquent taxes"—a holding that neither the Eighth Circuit nor the Supreme Court addressed on appeal. *Tyler v. Hennepin Cnty.*, 505 F. Supp. 3d 879, 887 (D. Minn. 2020) (emphasis in original). In this case, by contrast, Plaintiff mounts a direct challenge to his property tax liability. And he does not allege anything akin to *Tyler*'s confiscation of surplus funds.

Plaintiff further alleges that Orange County and its agents acted "as a RICO organization to deny [P]laintiff's civil rights" or otherwise perpetrated some type of grand larceny against him. (Am. Pet. ¶ 5; Pl's Supp. Mem. 2–3.) Even though these statutes would not ordinarily

13

implicate the TIA, the full context of Plaintiff's papers makes clear that both statements are little more than a reframing of Plaintiff's core objection to his tax exemption denial and therefore provide no basis to retain jurisdiction. *See Levy v. Pappas*, No. 04-CV-6498, 2005 WL 1564970, at *11 (N.D. Ill. July 1, 2005) (holding TIA barred RICO claim that was "really an attempt to obtain tax refunds and to complain about how the tax system is operated"), *aff'd*, 510 F.3d 755 (7th Cir. 2007); *see also Zewadski v. City of Reno*, No. 05-CV-173, 2006 WL 8441737, at *7 (D. Nev. Mar. 9, 2006) (same); *cf. Hammoud v. Cnty. of Wayne*, No. 15-CV-14461, 2016 WL 4560635, at *4 (E.D. Mich. Sept. 1, 2016) (explaining that the TIA does not usually "implicate" civil RICO claims). To the extent these references can be construed apart from Plaintiff's challenge to his tax liability—quite a leap even for a pro se pleading—they fail on their own terms. Both the grand larceny statute and the state RICO statute Plaintiff cites, (Am. Compl. at 2 (citing N.Y. Penal Law §§ 460, 155)), are criminal code provisions with no private right of action. *Wilson v. Neighborhood Restore Dev.*, No. 18-CV-1172, 2019 WL 4393662, at *7 (E.D.N.Y. Sept. 13, 2019) ("As private individuals, Plaintiffs cannot bring a claim under state criminal law."); *id.*, at *7 (noting that, unlike the federal RICO statute, Article 460 "does not create a private civil action in which those allegedly injured by enterprise corruption can seek treble damages" (quoting New York Practice Series – New York Criminal Law § 36:1 n.11 (4th ed. 2019))); *Peterec v. Hilliard*, No. 12-CV-3944, 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013) (finding a "claim [under New York Penal Law] must fail because private citizens do not have a private cause of action for criminal violations." (internal quotation marks omitted)); *see also Tao v. Elite Cold Storage, LLC*, No. 23-CV-6599, 2023 WL 7738490, at *2 n.2 (S.D.N.Y. Nov. 15, 2023) ("[V]iolations of the [federal] Criminal Code may not serve as the basis for a civil cause of action absent an express or implied private right of action, which Plaintiff[] do[es]

not suggest exists here." (quotation marks omitted)).  Further, Plaintiff is missing several of the elements of a civil RICO claim, including particularized allegations of "racketeering activity," not to mention a pattern of such activity.  *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 123, 134 (S.D.N.Y. 2023) (outlining elements of civil RICO claim).

Finally, it is not clear what to make of Plaintiff's allegations about unreceived tax bills. (*See* Memo Endorsement (Dkt. No. 25).)  First, the Court is not aware of a law requiring municipalities to mail property tax documents to individuals who claim to own property without a recorded deed.  Even assuming the County had that obligation, it is hard to piece together a constitutional due process violation from it.  To state such a claim, "[a] plaintiff must plausibly allege '(1) that he possessed a [property] interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.'"  *Jabot v. MHU Couns. Roszel*, No. 14-CV-3951, 2016 WL 6996173, at *7 (S.D.N.Y. Nov. 29, 2016) (quoting *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).  Plaintiff's alleged ownership of real property clearly satisfies the first prong of that test.  But he does not allege a deprivation.  At best, the Complaint alleges that the County *may* commence forfeiture proceedings if the property remains tax delinquent for too long.  Yet Plaintiff at no point alleges that this is likely or imminent, and he does not explain what process is due now that cannot be cured by post-deprivation procedures, which are adequate in the mine run of tax cases. *See Kubicek v. Westchester County*, No. 08-CV-372, 2013 WL 5423961, at *6 (S.D.N.Y. Sept. 27, 2013) ("It is well-established that in New York, an Article 78 proceeding . . . [is] an avenue of post-deprivation redress that satisfies due process requirements." (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York (HANAC)*, 101 F.3d 877, 881 (2d Cir. 1996) ("We have held on numerous occasions that an Article 78 proceeding is a perfectly

adequate postdeprivation remedy . . . .")))._4_ Tying everything together, an action seeking to enjoin tax foreclosure proceedings, even a constitutional one, would be a challenge to the "collection" of a state tax, and would therefore be barred by the TIA. *See Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 10 (2015) (explaining that "forfeiture" is a form of "collection" for purposes of the TIA). These additional allegations therefore fail to confer subject matter jurisdiction.

Accordingly, the Court dismisses Plaintiff's claims for lack of subject matter jurisdiction.

### III. Conclusion

For the foregoing reasons, Defendants' initial and supplemental Motions are granted.

Because this is the first adjudication of his claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file a Second Amended Complaint alleging additional facts and otherwise addressing the deficiencies the Court has identified, Plaintiff must do so within 30 days of the date of this Order. The Second Amended Complaint will replace, not supplement, the previous complaints. The failure to timely file an amended complaint may result in the dismissal of this Action with prejudice.

To be clear, the Court grants Plaintiff leave to file a *single* amended complaint. The Court previously granted Plaintiff considerable flexibility in how he pleaded this case, but that

---

[4] Plaintiff also raises the entirely speculative concern that Defendants are conspiring to deny him notice in an attempt to declare his property abandoned and expedite forfeiture proceedings. (*See* Pl's Supp. Mem. 2.) Were such a scheme in the works, Plaintiff would have several layers of protection: (1) to declare a property abandoned, an enforcing officer must make three consecutive inspections, at different times of day, to ensure it is unoccupied; (2) if property is deemed abandoned, the tax debt on the property may be redeemed for a period of at least one year; and (3) notice of an abandonment determination must be served on all property owners in addition to being filed with the County. *See* NY Real Prop. Tax Law §§ 1111-a(1)–(3). Finally, if the County fails to take any of these steps before seizing property, New York law provides that "[a]ny person . . . aggrieved" may seek review of that proceeding in New York Supreme Court. *Id*. § 1111-a(5).

approach resulted in numerous purported amendments and motions, which detracted from a speedy resolution of Plaintiff's claims.

    The Clerk of Court is respectfully directed to terminate the pending Motions. (*See* Dkt. Nos. 18, 29, 36.)

SO ORDERED.

Dated:   September 24, 2024
           White Plains, New York

_____
KENNETH M. KARAS
United States District Judge